ROBERT J. FORTIN & another[1] *vs.* OX-BOW MARINA, INC.

Worcester. April 4, 1990. - August 13, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Uniform Commercial Code*, Acceptance of goods, Revocation of acceptance, Sale of goods, Damages. *Sale*, Acceptance of goods, Revocation of acceptance. *Damages*, Breach of sales contract. *Practice, Civil*, Appeal.

In an action by purchasers against the seller of a recreational boat, the judge's findings of fact, which were not clearly erroneous, supported his conclusions that the defects in the vessel substantially impaired its value to the purchasers and that the purchasers' revocation of acceptance, occurring four months after delivery of the boat, was timely in the circumstances and thus was effective under § 2-608 of the Uniform Commercial Code, G. L. c. 106. [315-320]

Purchasers who effectively revoked their acceptance of a recreational boat were entitled to recover from the seller, as consequential and incidental damages, the amount of the interest they had paid on their purchase money loan, as well as the sales tax they had paid on the transaction. [320-323]

On appeal in a civil action the parties were precluded from reversing the positions they had maintained at trial. [323]

CIVIL ACTION commenced in the Superior Court Department on March 26, 1986.

The case was heard by *Mel L. Greenberg*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Benjamin A. Barnes* for the defendant.

*Richard T. Tucker* for the plaintiffs.

LYNCH, J. The plaintiffs, Robert and Marie Fortin, filed this action to seek money damages arising from their brief

---

[1]Marie L. Fortin.

ownership of a trouble-plagued thirty-two foot Bayliner Conquest power boat, which they had purchased in 1985 from the defendant, Ox-Bow Marina, Inc. Relief was sought under the Uniform Commercial Code (U.C.C.) (G. L. c. 106 [1988 ed.]), on the grounds of revocation of acceptance and breach of warranties; G. L. c. 93A (1988 ed.), alleging unfair trade practices; and on common law negligence. The matter was tried before a judge in the Superior Court, sitting without a jury. The judge ruled in favor of the defendant on the warranty and c. 93A counts, but also ruled that the Fortins had effectively revoked acceptance of the boat and awarded damages in the amount of $24,364.96. Included in that judgment, as incidental and consequential damages, respectively, were the sales tax and the interest paid by the Fortins on the loan that they obtained when they purchased the Bayliner. The defendant timely appealed, and we transferred the case here on our own motion.[2] We affirm the judgment.

The judge found the following pertinent facts. The Fortins, owners of a twenty-one foot Larson powerboat, were interested in "trading up" to a larger vessel that they could use off Cape Cod. At a Springfield boat show they purchased from Ox-Bow the Bayliner Conquest after agreeing on a trade-in allowance for their Larson, and after having been assured of delivery in time for the boating season and of repair service in the Cape Cod area.

---

[2]The judge also found for the plaintiffs on their claim that Ox-Bow had negligently inspected and repaired their boat, and appears to have separately awarded damages on this count equal to the amount awarded on the revocation of acceptance claim. The defendant has not appealed from the judgment on the negligence count. Such circumstances would appear to render the defendant's appeal moot, as there would seem to be a wholly independent and unappealed basis for the full extent of the judgment. However, in his rulings the judge analyzed the issue of damages under the U.C.C. and subsumed his brief reference to negligence within the framework of the U.C.C. In addition, in his order the judge listed in parentheses after the revocation of acceptance judgment and damage amount, "same cause of action as found in count IV," which was the negligence claim. Because it is not entirely clear that the judge considered the theories of the claims for negligence and revocation of acceptance as distinct, we review the issues raised in the defendant's appeal.

The new boat was delivered to the Ox-Bow Marina on April 23, 1985. Much preparation work was needed in order for the boat to be ready for use, including installation of the cabin top and pulpit, installation of special equipment and optional items, and electrical work. Furthermore, the boat arrived with ill-fitting engine latches, marred gel coat in the cockpit, a missing bow eye, and numerous scrapes on the hull near the water line. The Fortins inspected the boat on May 8, 1985, and called to Ox-Bow's attention a number of defects which they had observed. The Ox-Bow sales representative assured them that all the defects would be cured by the time of closing on the boat, set for May 21.

On the day of the closing, which took place on Ox-Bow's premises, the Fortins checked their boat and noticed that none of the preparation work had been started on the Bayliner. They expressed reluctance to close on the boat until it was operational, but Ox-Bow's representative at the closing assured them that not only would the boat be completely ready shortly, but that, if the Fortins did not close that day, Ox-Bow would charge them interest and storage fees until the transaction was completed. The Fortins went ahead with the closing, at which time they borrowed $51,500 from Horizon Financial, which was disbursed to complete the transaction. They wrote a check in the amount of $6,259.56 to Ox-Bow, representing the difference between the original purchase price as adjusted for extras bought for the boat, and the amount available from the Horizon loan.

About a week after the closing the Fortins inspected the boat at the suggestion of an Ox-Bow representative and made a list of items that needed to be repaired or corrected. These items included a nonfunctioning hot water pump; a broken pedestal seat; broken trim tabs; a nonfunctioning flush mechanism in the marine toilet system; chips in the wood trim; stains on the platform; a crack in the swimming platform where it fastened to the stern of the boat; and a broken door latch. In addition, none of the special equipment ordered by the Fortins had yet been installed. On the week-

end of May 31 to June 1, 1985, the plaintiffs discovered and reported that the marine toilet was not functioning properly.

The boat was transported to Hyannis on June 21, 1985. On delivery the Fortins noted again that most of the original defects had not been repaired, that during transit the hull had been scraped below the water line near the keel, and that the inside of the boat was filthy. The Fortins complained, but nonetheless accepted the boat and paid additional fees for electronic work, gas, transportation charges, and cleaning of the toilet system.

The Fortins set out on their maiden voyage on June 22, 1985, and discovered that the depth finder and marine radio that Ox-Bow had installed were not working. Then, within one hour of travel, the starboard engine overheated and had to be shut down. The Fortins' Bayliner was powered by two inboard-outboard engines. The boat returned to the slip on one engine, and the Fortins immediately notified Ox-Bow of the problems with the engine and the electronic equipment. Ox-Bow's representative promised the Fortins that repairs would be performed within the next few days.

Ox-Bow's service representative arrived on July 8 and worked on the engine only. He was informed at that time that, in addition to the other defects, the fuel gauge was not working and remained constantly in the "full" position.

The Fortins remained in touch with Ox-Bow Marina during the course of the next month, as they awaited repairs of the defects. In the meantime they used the boat for approximately five weekends. During the fifth weekend, on August 11, 1985, the starboard engine overheated again. The Fortins again returned to shore on one engine. Inspection suggested by Ox-Bow's repair department failed to reveal the source of the trouble, and the Fortins were informed that Ox-Bow was unable to provide service to the Cape in the near future. The Ox-Bow representative suggested that they take the Bayliner to another marina where warranty work might be done on the engine. Between August 11 and September 3, 1985, numerous telephone calls were made between the Fortins and Ox-Bow, as the latter attempted to get various engine dealers

to look at the boat on Cape Cod, without success. During this period the Fortins used the boat at its slip only and did not travel in it.

On September 3, 1985, Ox-Bow sent a truck to Hyannis to haul the Fortins' Bayliner back to Northampton for repairs. At that point the marine toilet system was malfunctioning, and the hoses from the holding tank were leaking from the buildup of accumulated wastes. As a result, a foul odor permeated the boat. The electric bilge pump was also malfunctioning, and water from the bilge compartment had risen to the point where it was causing rugs in the galley to float. Additional repairs were needed, and some of the original defects had never been redressed.

By October 1985, the hoses in the toilet system were replaced, and a new starboard engine was installed, but none of the other defects had been repaired. On October 31, 1985, the Fortins, through counsel, notified Ox-Bow in writing that they were revoking their acceptance of the Bayliner, and seeking a refund of their purchase price in addition to reimbursement for expenses incurred as a result of their problems with the boat that summer.

During the two-year life of the loan on the boat the plaintiffs incurred $11,474.96 in interest. The judge found there was insufficient evidence to determine what portion of this amount represented interest that the Fortins would have been obligated to pay on their previous loan. They also paid $2,250 in sales tax on the Bayliner.

The defendant challenges the Superior Court judgment on a number of grounds. First, it contends that the judge erred in ruling that the Fortins' revocation of acceptance was effective. Second, Ox-Bow argues that the judge incorrectly awarded, as consequential and incidental damages, the Fortins' interest payments on their purchase-money loan, and the sales tax they paid on the Bayliner. Third, Ox-Bow asserts that the judge should not have ruled in its favor on the breach of implied warranty of merchantability claim, conceding that such a breach existed, with the result that an award of consequential damages would not be warranted at all.

1. *Revocation of acceptance.* The Fortins' rights in this regard are governed by art. 2 of the U.C.C. There is no dispute that the Fortins, having inspected the boat on several occasions earlier and after noting a number of defects, did not reject the boat, as they would have been entitled to do under G. L. c. 106, § 2-602. However, a buyer may revoke an acceptance providing that he or she can show that the "nonconformity" in the goods that the buyer has purchased "substantially impairs [their] value to him [or her]," c. 106, § 2-608 (1); that the buyer accepted the goods on the "reasonable assumption that [their] non-conformity would be cured and it has not been seasonably cured," § 2-608 (1) (a), and that he or she revoked acceptance "within a reasonable time after the buyer discovers or should have discovered the ground for it." § 2-608 (2). The judge found that the Fortins had effectively revoked their acceptance of the Bayliner under these principles.

The issues of whether a revocation was effective, whether defects substantially impaired the value of goods, and whether notice of revocation was timely, are all matters to be resolved by the fact finder. *Jeffco Fibres, Inc.* v. *Dario Diesel Serv., Inc.*, 13 Mass. App. Ct. 1029, 1031 (1982). See *Sumner* v. *Fel-Air, Inc.*, 680 P.2d 1109, 1116-1117 (Alaska 1984); *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 121 (1976); *Black* v. *Don Schmid Motor, Inc.*, 232 Kan. 458, 462 (1983); *Durfee* v. *Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn. 1977); *Welch* v. *Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. 358, 364-365 (1981); *Ybarra* v. *Modern Trailer Sales, Inc.*, 94 N.M. 249, 250 (1980); *Erling* v. *Homera, Inc.*, 298 N.W.2d 478, 481 (N.D. 1980); *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc.*, 5 Ohio St. 3d 181, 186 (App. Ct. 1983); *Schumaker* v. *Ivers*, 90 S.D. 75, 81-83 (1976); *Vista Chevrolet, Inc.* v. *Lewis*, 704 S.W.2d 363, 368, 369 (Tex. Ct. App. 1985); *Aubrey's R.V. Center* v. *Tandy Corp.*, 46 Wash. App. 595, 602-603 (1987). The judge's findings of fact will not be disturbed unless clearly erroneous, Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 643 (1983).

That is especially the case when, as here, the judge's conclusions from the evidence were based primarily on his evaluation of oral testimony. *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 678 n.5 (1985).

Ox-Bow's arguments that the plaintiffs failed to prove that the Bayliner's defects substantially impaired its value to them are based primarily on the defendant's own view of the facts. We have reviewed the record and conclude that the judge had evidentiary support for all his findings. The evidence that the starboard engine overheated twice; the bilge pump was defective; there was an array of malfunctioning electrical equipment; and the marine toilet only functioned partially — none of which alone could be characterized as a minor, cosmetic, or insubstantial problem with a power boat — in concert support a finding of substantial impairment of the boat's value.

The defendant stresses the replacement of the defective starboard engine with a new engine prior to the Fortins' revocation, and the Fortins' use of the boat on some six or seven weekends in the summer of 1985, to assert that the judge clearly erred in finding the boat's value had been substantially impaired.

In weighing this issue the trier of fact must decide whether the defects substantially impair the value of the goods to the revoking buyer, c. 106, § 2-608 (1). Most courts read this test as an objective, or common sense, determination that the impaired value of the goods to the buyer was substantial as opposed to trivial, or easily fixed, given his subjective needs. See *Black* v. *Don Schmid Motor, Inc.*, 232 Kan. at 462; 4 R.A. Anderson, Uniform Commercial Code § 2-608:23, at 187 (3d ed. 1983). The evaluation is made in light of the "totality of the circumstances" of each particular case, including the number of deficiencies and type of nonconformity and the time and inconvenience spent in downtime and attempts at repair. *Rester* v. *Morrow*, 491 So. 2d 204, 210 (Miss. 1986). See *Jackson* v. *Rocky Mountain Datsun, Inc.*, 693 P.2d 391, 393 (Colo. Ct. App. 1984); *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. at 121. *Black* v. *Don*

*Schmid Motor, Inc.*, 232 Kan. at 464-466. *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc.*, 5 Ohio St. 3d at 185-186. Thus, it has been said that, in the proper circumstances, even cosmetic or minor defects that go unrepaired despite a number of complaints or attempts at repair, *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc., supra* at 185; *Ybarra* v. *Modern Trailer Sales, Inc.*, 94 N.M. at 251; 4 R.A. Anderson, Uniform Commercial Code, *supra* at § 2-608:24, at 189, or remaining minor defects after an earlier, serious problem has been repaired, *Rester* v. *Morrow, supra* at 210; *Welch* v. *Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. at 364, or defects which do not totally prevent the buyer from using the goods, but circumscribe that use or warrant unusual or excessive maintenance actions in order to use, *Black* v. *Don Schmid Motor, Inc., supra* at 466; *Erling* v. *Homera, Inc.*, 298 N.W.2d at 482, can substantially impair the goods' value to the buyer. Experiencing in a major investment a series of defects, even if some have been cured and others are curable, can shake a buyer's faith in the goods, at which point "the item not only loses its real value in the buyer's eyes, but also becomes an article whose integrity has been substantially impaired and whose operation is fraught with apprehension." *Lathrop* v. *Tyrell*, 128 Ill. App. 3d 1067, 1068-1069 (1984). See *Tiger Motor Co.* v. *McMurtry*, 224 So. 2d 638, 646-647 (Ala. 1969); *Durfee* v. *Rod Baxter Imports, Inc.*, 262 N.W.2d at 354; *Rester* v. *Morrow*, 491 So. 2d at 210-211; *Welch* v. *Fitzgerald-Hicks Dodge Inc.*, 121 N.H. at 364; *McCullough* v. *Bill Swad Chrysler Plymouth, Inc.*, 5 Ohio St. 3d at 186.

Under these principles we have no difficulty in concluding that the judge's finding of substantial impairment was not clearly erroneous, despite the fact that the Bayliner's most serious defect, the starboard engine, was rectified before the Fortins revoked acceptance. The judge's unassailed conclusion that the defendant was negligent in inspecting, maintaining, and repairing the Fortins' Bayliner supported the view that the boat's value to its owners was substantially impaired. There was evidence that a number of defects, ob-

served by the Fortins from the moment their Bayliner arrived at Ox-Bow Marina, were never repaired, despite regularly repeated complaints.

As noted above, whether notice of revocation has been made within a "reasonable time" is also a question of fact. G. L. c. 106, § 1-204 (2). *Irrigation Motor & Pump Co.* v. *Belcher*, 29 Colo. App. 343, 348 (1971). *Welch* v. *Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. at 365. *Schumaker* v. *Ivers*, 90 S.D. at 83. *Aubrey's R.V. Center* v. *Tandy Corp.*, 46 Wash. App. 595, 603 (1987). Many courts have held that any delay on the part of the buyer in notification of revocation of acceptance is justified where the buyer is in constant communication with the seller regarding nonconformity of the goods, and "the seller makes repeated assurances that the defect or nonconformity will be cured and attempts to do so." *Vista Chevrolet, Inc.* v. *Lewis*, 704 S.W.2d at 369. See *Sumner* v. *Fel-Air, Inc.*, 680 P.2d at 1117; *Seekings* v. *Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 604 (1981); *Gramling* v. *Baltz*, 353 Ark. 352, 358 (1972); *Irrigation Motor & Pump Co.* v. *Belcher, supra* at 603; *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. at 122; *Bair* v. *A.E.G.I.S. Corp.*, 523 So. 2d 1186, 1189 (Fla. Dist. Ct. App. 1988); *Welch* v. *Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. at 365; *Ybarra* v. *Modern Trailer Sales, Inc.*, 94 N.M. at 250-251; *Warren* v. *Guttanit, Inc.*, 69 N.C. App. 103, 110 (1984); *Aubrey's R.V. Center* v. *Tandy Corp., supra* at 603.

Beginning weeks before they accepted the Bayliner, right up through the time of revocation, the Fortins were in frequent contact with Ox-Bow Marina in an effort to have their boat repaired. That conduct was encouraged by Ox-Bow representatives, who asked the Fortins to submit updated lists of problems with the boat from time to time, and who kept assuring them that those problems would be redressed. It would be anomalous, given the U.C.C.'s purpose to encourage buyers and sellers to reach reasonable accommodations to minimize losses, *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. at 123, to penalize buyers like the Fortins for their patience in giving sellers like Ox-Bow the opportunity

to rectify nonconformities before revoking acceptance of the goods. *Ford-Motor Credit Co.* v. *Harper*, 671 F.2d 1117, 1124 (8th Cir. 1982). *Irrigation Motor & Pump Co.* v. *Belcher*, *supra* at 348. *Ybarra* v. *Modern Trailer Sales, Inc.*, *supra* at 251. *Aubrey's R.V. Center* v. *Tandy Corp.*, *supra* at 604. 4 R.A. Anderson, Uniform Commercial Code, *supra* at § 2-608:39.

Thus, the defendant errs when it looks solely at the length of time it took the Fortins to revoke acceptance — four months — in asserting that the notice of revocation was untimely. Delays of longer than four months have been held to be reasonable, when regular complaints from the buyer and assurances and repair attempts from the seller filled the gap between acceptance and revocation. See *Gramling* v. *Baltz*, 253 Ark. at 357-358 (two-year delay in revoking acceptance of truck not unreasonable); *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. at 122 (fourteen-month delay in notice of revocation not unreasonable); *Jackson* v. *Rocky Mountain Datsun, Inc.*, 693 P.2d at 394 (six to eight months between acceptance of automobile and revocation deemed not unreasonable); *Bair* v. *A.E.G.I.S. Corp.*, 523 So. 2d at 1189 (buyer's two-year delay in revoking acceptance of boat reasonable); *Ybarra* v. *Modern Trailer Sales, Inc.*, 94 N.M. at 250 (four-year delay in revoking acceptance of mobile home held not unreasonable); *Welch* v. *Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. at 365 (five-month delay during which buyer drove automobile 11,000 miles deemed reasonable for revocation); *Warren* v. *Guttanit, Inc.*, 69 N.C. App. at 111 (eight-month delay in revoking acceptance of new roof not unreasonable); *Erling* v. *Homera, Inc.*, 298 N.W.2d 478 (N.D. 1980) (one and one-half years between acceptance of mobile home and revocation reasonable); *Vista Chevrolet, Inc.* v. *Lewis*, 704 S.W.2d at 369 (fifteen-month delay held reasonable); *Aubrey's R.V. Center* v. *Tandy Corp.*, 46 Wash. App. at 603 (nine-month gap between acceptance of computer and revocation deemed reasonable). The findings of fact by the trial judge, not clearly erroneous, support his con-

clusion that the Fortins' delayed revocation of acceptance of the Bayliner was timely in the circumstances of this case.

2. *Damages.* Having met the requirements of G. L. c. 106, § 2-608, and revoked acceptance of the Bayliner, the Fortins had the same rights as if they had rejected the boat initially. G. L. c. 106, § 2-608 (3). *Delano Growers' Coop. Winery* v. *Supreme Wine Co.,* 393 Mass. at 677 n.4. That means that they are entitled to recover under § 2-711, "so much of the price as has been paid," and under § 2-715, "incidental and consequential damages." See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming,* 376 Mass. 826, 838 (1978).

Ox-Bow does not argue with the judge's award of direct damages to the Fortins. However, it contends that the judge erred in awarding as consequential and incidental damages, respectively, the interest the Fortins paid on the loan they took out at the time of the purchase of the Bayliner and the sales tax.

In construing the scope of incidental and consequential damages under the U.C.C., this court has observed on more than one occasion that the U.C.C.'s remedies in general "are to be administered liberally so as to put the aggrieved party in as good a position as if the other party had fully performed." *Delano Growers' Coop. Winery* v. *Supreme Wine Co.,* 393 Mass. at 679. *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming,* 376 Mass. at 838. G. L. c. 106, § 1-106 (1). An award of damages in a case involving a proper rejection or revocation of acceptance, courts have observed, aims primarily at restitution: to return the innocent buyer "to the position he or she would have been in if the contract had never been entered into." *Aubrey's R.V. Center* v. *Tandy Corp.,* 46 Wash. App. at 607. *Nachazel* v. *Miraco Mfg.,* 432 N.W.2d 158, 163-164 (Iowa 1988). Consequential damages have been defined as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." G. L. c. 106, § 2-715 (2)(*a*). See *Delano Growers' Coop. Winery* v. *Supreme Wine Co., supra* at 680. Whether a particular element

of damage was within the contemplation of the seller, as well as the award of damages in general, is a question for the fact finder. 4 R.A. Anderson, Uniform Commercial Code, *supra* at § 2-715:15, at 508.

Interest on a purchase-money loan has been held to be recoverable as damages on revocation of acceptance in all of the jurisdictions that have considered the question.[3] For the most part, such loan interest has been characterized as consequential damages because it arises from the particularized requirements and needs of the buyer, and thus is awarded when the seller had reason to know the buyer was financing the purchase. See *Carl Beasley Ford, Inc.* v. *Burroughs Corp.*, 361 F. Supp. 325, 334 (E.D. Pa. 1973); *Bair v. A.E.G.I.S. Corp.*, 523 So. 2d at 1186-1190; *Nachazel v. Miraco Mfg.*, 432 N.W.2d at 163; *Hudson* v. *Dave McIntire Chevrolet*, 180 Ind. App. 646, 653-654 n.4 (1979); *Schatz Distrib. Co.* v. *Olivetti Corp. of America*, 7 Kan. App. 676, 682 (1982); *Distco Laminating, Inc.* v. *Union Tool Corp.*, 81 Mich. App. 612, 622 (1978); 4 R.A. Anderson, Uniform Commercial Code, *supra* at § 2-715:46, at 533.[4] We, therefore, adopt the position of those courts that have considered

---

[3]All the cases relied on by the defendant in arguing this issue to the contrary involve breach of warranty claims and buyers who have retained the goods. In breach of warranty cases jurisdictions have split on whether interest is recoverable. See *Chatlos Sys.* v. *National Cash Register Corp.*, 635 F.2d 1087, 1088 (3d Cir. 1980); *Barnard* v. *Compugraphic Corp.*, 35 Wash. App. 414, 420 (1983) (holding interest on a purchase-money loan could not be considered consequential damages of breach of warranty). Contra *Owens* v. *Meyer Sales Co.*, 129 Wis. 2d 491, 494 (Ct. App. 1986) (allowing recovery of interest as damages in breach of warranty case).

[4]Some courts have taken alternative views in allowing recovery of purchase-money interest to buyers who have properly rejected or revoked acceptance of goods, or even retained goods and sued for breach of warranty. In a few cases, such an award has been allowed as incidental damages. *Vernon* v. *Potamkin Cadillac Corp.*, 118 App. Div. 2d 698, 700 (N.Y. 1984). *McGinnis* v. *Wentworth Chevrolet Co.*, 57 Or. App. 443, 449-450 (1982). *Owens* v. *Meyer Sales Co.*, *supra* at 494. Incidental damages under the U.C.C. include such costs as "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected." G. L. c. 106, § 2-715 (1). There is no requirement that such expenses have been reasonably foreseeable by

this issue and conclude that interest paid on a purchase money loan is recoverable as consequential damages where there has been an effective rejection or revocation of acceptance under the U.C.C., when the seller had reason to know that the buyer was financing the purchase.

In this case it is clear that, as the judge found, Ox-Bow Marina knew that the Fortins were borrowing money to help finance their purchase. The defendant argues, however, that this loan was not strictly a purchase-money loan, since approximately $15,000 of the loan was for the purpose of retiring the remaining debt on the Fortins' old boat, and thus some of the interest they were paying on the new loan reflected costs that had nothing to do with the Bayliner on which they had revoked acceptance. This argument overlooks the fact that Ox-Bow Marina received title to the trade-in boat free of encumbrances, as part of the transaction and that the amount of the trade-in allowance exceeded the value of the Fortins' equity. That the parties paid off the old note at the closing on the new boat does not compel the conclusion that some of the interest on the purchase money note was for the preexisting obligation. The judge, therefore, did not err in his award of interest on the purchase-money note.

The remaining challenge by the defendant is to the award of damages for the sales tax paid by the Fortins when they bought the Bayliner. The few courts that have been presented with this issue have allowed buyers to recover sales tax paid on goods in both revocation and breach of warranty cases, as either incidental damages under § 2-715 (1) of the U.C.C., *Lloyd* v. *Classic Motor Coaches, Inc.*, 388 F. Supp. 785, 791 (N.D. Ohio 1974); *Coyle Chevrolet Co.* v. *Carrier*, 397 N.E.2d 1283, 1286-1287 (Ind. Ct. App. 1979), or as part of the purchase price when computing direct compensa-

---

the seller.

Others have simply included the interest and financing costs in the purchase price and used that higher original sale price from which to subtract the resale price and arrive at direct, compensatory damages. *Thompson Chrysler-Plymouth, Inc.* v. *Myers*, 48 Ala. App. 350, 354 (1972). *Burrus* v. *Itek Corp.*, 46 Ill. App. 3d 350, 357 (1977).

tory damages, *Thompson Chrysler-Plymouth, Inc.* v. *Myers*, 48 Ala. App. at 352, 354. Since sales tax is an expense "reasonably incurred in . . . receipt . . . of goods" in connection with which the buyer has effectively revoked acceptance, G. L. c. 106, § 2-715 (1), we believe the tax is properly recoverable as incidental damages. The trial judge did not err in assessing against Ox-Bow the $2,250 the Fortins paid in sales tax on the Bayliner.

3. *Breach of warranty.* The judge below ruled in favor of the defendant on the breach of warranty claim. The plaintiff did not appeal. That both parties now perceive some advantage in a change of position does not raise an appellate issue. Litigants are estopped from reversing their earlier positions. *Brown* v. *Quinn*, 406 Mass. 641, 646 (1990). See *Elfman* v. *Glaser*, 313 Mass. 370, 376 (1943); *Boston* v. *Nielsen*, 305 Mass. 429, 433 (1940). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Davis* v. *Wakelee*, 156 U.S. 680, 689 (1895).

Nor does the plaintiffs' acceptance of the defendant's newfound position on this issue properly bring it before us. The plaintiffs did not take a cross appeal from the trial court's judgment. Therefore, they are precluded from obtaining a more favorable judgment than the one they were granted below. *Matter of Saab*, 406 Mass. 315, 329 n.15 (1989). *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 627-628 n.18 (1985). *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977). The issue of breach of implied warranty is thus not open on appeal.

The judgment that the plaintiffs properly revoked acceptance of the boat, and that they are entitled to recover damages including the interest costs incurred on their loan and the amount of the sales tax is affirmed.

*So ordered.*